UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRISTOL COUNTY WATER AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and GLATFELTER CLAIMS MANAGEMENT, INC., <br><br> Defendants. | C.A. No. 1:24-cv-308-MSM-PAS |

ORDER

Mary S. McElroy, United States District Judge.

This case arises from an insurance dispute between the Bristol County Water Association ("BCWA"), National Union Fire Insurance Company of Pittsburg, Pa., ("National Union"), and National Union's agent, Glatfelter Claims Management ("Glatfelter"). BCWA sued National Union and Glatfelter (collectively "the Defendants") in Rhode Island Superior Court, but the Defendants recently removed the case to this Court. BCWA now moves to remand the case to state court. Glatfelter, in turn, moves to partially dismiss BCWA's claims against it. For the reasons below, the Court will GRANT the BCWA's Motion to Remand (ECF No. 8).

In 2021, North Farm Home Owners Association, Inc. ("North Farm") filed the underlying suit against BCWA in Rhode Island state court over the malfunctioning

of a water meter. (ECF No. 1 at 10.) Two years later, the lawsuit was reported to National Union and Glatfelter. *Id.* National Union insures BCWA, and Glatfelter is an agent of National Union that examines its insurance claims. *Id.* at 9. BCWA and Glatfelter fell into a dispute about whether Rhode Island law gave BCWA the right to employ independent counsel at National Union's expense in North Farm's case against BCWA. (ECF No. 8-2; No. 8-3.)

BCWA sued National Union and Glatfelter in Rhode Island state court, seeking a declaratory judgment saying that it had the right to employ counsel at National Union's expense. (ECF No. 1 at 9–15.) The Defendants recently removed this action to federal court based on diversity jurisdiction. *Id.* at 1–7. BCWA now moves to remand the case to state court, primarily arguing that this Court lacks jurisdiction because the amount in controversy is too small. (ECF No. 8.) Glatfelter moves to dismiss one of BCWA's claims against it, arguing that because it is not an insurer, it cannot be held liable for bad-faith insurance practices. (ECF No. 9.) Since arriving in federal court, the Defendants have asserted two counterclaims for declaratory judgments against BCWA: one that National Union "is not obligated to defend BCWA," and another that National Union is "not obligated to indemnify BCWA." (ECF No. 11 ¶¶ 29, 32.)

The Court starts and ends with BCWA's Motion to Remand (ECF No. 8). Federal courts, being of limited jurisdiction, have "a responsibility to police the border of federal jurisdiction." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001). Jurisdictional limitations, combined with principles "of federalism and comity,"

require that "removal statutes are to be construed strictly and, in ambiguous cases, construed against removal." *Porter v. Am. Heritage Life Ins.*, 956 F. Supp. 2d 344, 347 (D.R.I. 2013) (internal citations omitted). The Court also must be mindful that "the plaintiff is the master of the claim" and some deference to the plaintiff's choice of forum is warranted. *Rossello–Gonzalez v. Calderon–Serra*, 398 F.3d 1, 11 (1st Cir. 2004) (cleaned up); *see also Amoche v. Guar. Tr. Life Ins.*, 556 F.3d 41, 50 (1st Cir. 2009) (discussing the "general rule of deference to the plaintiff's chosen forum").

Federal diversity jurisdiction is available in cases between parties from different states when the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). "The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." *Amoche*, 556 F.3d at 48. That includes "defendants removing to federal court," like National Union and Glatfelter. *Id.*

No one disputes diversity of citizenship here. Instead, the controversy is about the amount in controversy. Typically, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted," so long as it is "not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., v. Owens*, 574 U.S. 81, 87 (2014). But "if the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval ... is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 88. And if the amount in controversy is

not facially apparent from the Complaint, the Court may consider the Notice of Removal and any other relevant materials the parties submitted. *Amoche*, 556 F.3d at 51; *Reynolds v. World Courier Ground, Inc.*, 272 F.R.D. 284, 286 (D. Mass. 2011). Still, determining federal jurisdiction should be done "without an extensive fact-finding inquiry." *Spielman*, 251 F.3d at 4.

The Defendants assert that the amount in controversy requirement is satisfied because the underlying suit between North Farm and BCWA concerns over $500,000. (ECF No. 1 at 5–6.)  BCWA contests that; it argues that the Defendants cannot use the amount in controversy in the underlying suit as part of this case's amount in controversy.   (ECF No. 8-1 at 7–11.)   Instead, BCWA claims the amount in controversy is no more than roughly $25,400. *Id.* at 9.  That figure encompasses the attorneys' fees accrued during this action (between BCWA and the Defendants) and more importantly, the defense of the underlying suit (between BCWA and North Farm) that, should BCWA succeed here, the Defendants would fund. *Id.* at 9.

The question for this court is whether the amount in controversy in the underlying suit attaches to this case. The usual rule is that the "obligation [to defend] is so interwoven with the obligation to indemnify" that the amount in controversy in a declaratory action should include both. *Maryland Cas. Co. v. United Corp.*, 111 F.2d 443, 447 (1st Cir. 1940); *Centennial Ins. v. Patterson*, 495 F. Supp. 2d 157, 158 (D. Me. 2007) ("For this lawsuit, potential indemnity is considered along with defense costs."); *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 539 (7th Cir. 2007) (collecting cases).

But those cases expressly involved both the duty to defend *and* the duty to indemnify. *See, e.g., Maryland Cas. Co.*, 111 F.2d at 443 ("The controversy here presented involves not only the duty to defend the action, which may end in a liability for a large sum, but the obligation to indemnify the assured against such liability."); *Patterson*, 495 F. Supp. 2d at 158 ("Centennial's lawsuit, as it currently is framed, seeks a declaration of both the duty to defend and the duty to indemnify."); *Sadowski*, 441 F.3d at 537 (concerning an insurance company's attempt to secure "a declaratory judgment that it need not defend *or* indemnify its insured") (emphasis added).

This case is different. BCWA only seeks a declaration that National Union "is obligated to provide, and pay for, independent counsel" in the underlying suit under Rhode Island law. (ECF No. 13 at 2.) The Complaint is explicit in that respect. (ECF No. 1 at 13 (requesting that "this Court declare that the defendant, National Union Fire Insurance Company Of Pittsburgh, Pa., is obligated to provide, and pay for, independent counsel for the Bristol County Water Authority pursuant to holdings in applicable cases, which include, but are not limited to, *Employer's Fire Insurance Company v. Beales*, 240 A.2d 397 (RI 1968)")). In addition, BCWA's counsel was clear on this point: "That's it. That is the only form of declaratory relief sought." (ECF No. 13 at 2.) Should BCWA succeed here, the judgment declaring that National Union must provide it counsel will say nothing about National Union's obligation to indemnify it if North Farm wins the underlying suit.

And, despite the Defendants' insistence otherwise, the Complaint's remaining counts—breach of contract and bad faith—only stem from the Defendants' decision

5

not to provide counsel, not any decision about indemnification. When the Defendants removed this case to federal court, nothing in the record suggests they had decided their duty to indemnify BCWA in the underlying suit. (ECF No. 8-1 ¶ 29–30 (explaining that, at the time of removal, "the Defendants [had] issued a reservation of rights letter" explaining "there are certain damages they may not cover" but "they have not indicated they won't cover any and all damages that may be assessed.")) How could BCWA sue for breach of contract over a decision that hasn't yet been made? And more importantly, how could a decision about indemnification count towards the amount in controversy if, at the time of removal, BCWA had not put it in controversy? On these facts, any judicial decision about the duty to defend would be divorced from one about the duty to indemnify. As a result, the Court finds the general rule that the two are combined for amount in controversy purposes inapplicable here.

Things become thornier once the Defendants' counterclaims are considered. (ECF No. 11.) Defendants seek two declaratory judgments: one that National Union "is not obligated to defend BCWA," and another that National Union is "not obligated to indemnify BCWA." (ECF No. 11 at 19–20.) If indemnification for the underlying lawsuit—where more than $500,000 is allegedly at stake—counts, the amount in controversy would soar above what is necessary.

But those counterclaims are irrelevant for jurisdictional purposes.[1] "The amount in controversy requirement is ordinarily determined from the plaintiff's

---

[1] The Defendants did not specifically argue that counterclaims can satisfy the amount in controversy requirement, but they did argue that indemnity in the underlying suit, the precise subject of one of their counterclaims, should count. (ECF No. 12 at 5–10.)

complaint." *Watch Hill Partners, Inc. v. Barthel*, 338 F. Supp. 2d 306, 309 (D.R.I. 2004) (internal citations omitted); *see also Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995) (explaining that "it has long been the rule that a court decides the amount in controversy from the face of the complaint")). While the First Circuit has not directly addressed whether "a defendant's counterclaim can be considered in order to satisfy the amount-in-controversy requirement," district courts in this Circuit largely agree that they cannot. *Fed. Nat'l Mort. Assoc. v. Tompson*, No. 17–cv–0699–SM, 2018 WL 2426638, at *2 (D.N.H. May 21, 2018) (collecting cases). After all, "the traditional rule has been that no part of the required jurisdictional amount can be met by considering a defendant's counterclaim." 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3725.3 (Rev. 4th ed. 2024) (collecting cases). That holds true even if the counterclaims are mandatory, as is likely the case here. "Determination of the amount in controversy by reference to a compulsory counterclaim would be inconsistent with the removal statute's requirement that removed suits be within the original jurisdiction of the federal courts," and it would be "at odds with the well-pleaded complaint rule," too. *Id.* So the value of the Defendants' counterclaims is excluded from the amount in controversy calculation.

---

Because of the thin distinction between the two and the Court's independent duty to assess whether it has subject matter jurisdiction, it addresses this question.

Accordingly, the amount in controversy at the time of removal—August 2, 2024—was no more than roughly $25,400, the attorneys' fees across both actions.[2] (ECF No. 8-8 ¶¶ 4, 6.)  That cannot establish diversity jurisdiction.

The cost to defend the underlying suit may rise as the case progresses, but the First Circuit made clear that the amount in controversy is generally set "at the time of removal."  *Amoche*, 556 F.3d at 51.  Still, district judges within the First Circuit have reached different conclusions about whether that remains true for attorney's fees.  *See Cherelli v. InStore Grp., LLC*, 513 F. Supp. 3d 187, 191–92 (D. Mass. 2021) (identifying the split in authority); *compare Barbuto v. Advantage Sales & Mktg.*, LLC, 148 F. Supp. 3d 145, 148 (D. Mass. 2015) ("Fees that have not yet been incurred cannot be said to be in controversy at the time of removal.") (citing Wright & Miller, *Federal Practice & Procedure*, § 3712 (4th ed. 2020)), *with Raymond v. Lane Constr. Corp.*, 527 F. Supp. 2d 156, 163 (D. Me. 2007) ("A rule that treats attorney's fees differently from any other category of damage for purposes of ascertaining the amount of the 'matter in controversy' draws no support from the language of the

---

[2] As another court in this Circuit observed, attorney's fees are "normally excluded from the amount-in-controversy determination," but a district court can "consider potential attorney's fees as part of the amount-in-controversy calculation when a statute mandates or allows the payment of such fees." *Cherelli v. InStore Grp., LLC*, 513 F. Supp. 3d 187, 191 (D. Mass. 2021) (cleaned up) (internal citations omitted). The attorneys' fees from the underlying suit—for a total of $18,953.75—surely count: after all, the declaratory judgment action is about whether National Union must pay BCWA's attorney's fees for the North Farm case under Rhode Island law. (ECF No. 8-8 ¶ 4.) It is far less obvious that the attorneys' fees in this case between BCWA and the Defendants, currently $6,411.69, should count towards its own amount in controversy. (ECF No. 8-8 ¶ 6.) But the Court need not delve into that question, because even if those fees counted, the Defendants do not come close to satisfying the requirements for diversity jurisdiction.

[removal] statute."). But given (1) that the parties did not brief this issue and (2) that ambiguities in this posture favor remand, the Court declines to "wander into this jurisdictional thicket" just to try resolving "a difficult and fact-intensive jurisdictional issue that has generated differing treatments among trial judges within this Circuit, and more generally among the appellate courts of other circuits as well." *Cherelli*, 513 F. Supp. 3d at 191–92 (cleaned up).

The Court thus holds that the Defendants have not met their burden of establishing that the amount in controversy is greater than $75,000. The Court will GRANT BCWA's Motion to Remand (ECF No. 8) and accordingly declines to address Glatfelter's Partial Motion to Dismiss (ECF No. 9). This matter is remanded to the Rhode Island Superior Court sitting in Providence, for the counties of Providence and Bristol.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge
October 29, 2024